**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN GEORGE, JR.** | ) | |
| **Petitioner,** | ) | **Civil Action No. 10-65 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **ARCHIE LONGLEY,** | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER[1]

Petitioner Stephen George, Jr. is a federal inmate who is currently incarcerated at the

Federal Correctional Institution, McKean. He is serving a 71-month term of imprisonment,

which was imposed by the U.S. District Court for the Western District of Pennsylvania on

February 15, 2006. Before this Court is his petition for writ of habeas corpus pursuant to

28 U.S.C. § 2241, in which he disputes the Bureau of Prisons' (the "BOP's" or "Bureau's")

computation of his federal sentence. He claims he is entitled to additional credit against his

sentence.

## I.        Relevant Statutes and BOP Policy

The BOP is the agency responsible for implementing and applying federal law

concerning the computation of federal sentences.   See, e.g., United States v. Wilson, 503 U.S.

329, 331 (1992); 28 C.F.R. § 0.96.  In this case, the following statutes are relevant:  18 U.S.C.

§ 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be

---

[1]        In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a
United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

served concurrently with a state sentence; 18 U.S.C. § 3621(b), which governs the BOP's

authority to designate a state prison as a place of confinement for service of a federal sentence;

18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and,

18 U.S.C. § 3585(b), which governs the credit an inmate can receive for time he spent in official

detention prior to the date his federal sentence commenced (known as "prior custody credit.")

The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28,

Sentence Computation Manual ("PS 5880.28").  Also relevant to this case is Program Statement

5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05").[2]


### A.    The determination of whether a federal sentence is concurrent with or consecutive to a state sentence

18 U.S.C. § 3584(a) provides, in relevant part:

[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively…. *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.*[3]

---

[2]      BOP Program Statements are internal agency guidelines, and in many cases the policies set forth therein are "akin to an interpretive rule."  Reno v. Koray, 515 U.S. 50, 61 (1995).  The BOP policies at issue in this case are contained in Program Statements and are not also published in any federal regulation, and thus are not subject to public notice and comment before adoption.  Therefore, the policies are not entitled to the deference described in Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984).  See Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997).  However, the policies are still entitled to "some deference" from this court.  Koray, 515 U.S. at 61; Roussos v. Menifee, 122 F.3d 159, 163-64 (3d Cir. 1997); see also United States v. Mead Corp., 533 U.S. 218, 234-35 (2001); Elizabeth Blackwell Health Center for Women v. Knoll, 61 F.3d 170, 182 (3d Cir. 1995) (deferring to interpretive rule that was not subject to notice and comment when the Secretary of Health and Human Services' reconciliation of the competing interests in the Medicaid statute and Hyde Amendment was reasonable).

[3]      The BOP recognizes that "[o]n occasion, a federal court will order the federal sentence to run concurrently with or consecutively to a not yet imposed term of imprisonment.  Case law supports a court's discretion to enter such an order and the federal sentence shall be enforced in the manner prescribed by the court."  PS 5880.28, Chapt. I, at p. 32A.

2

(Emphasis added).  The BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently.  See PS 5880.28, Chapt. I, at pp. 31-33; PS 5160.05 at pp. 2-7.  It also recognizes that a federal sentencing court "may, from time to time, order concurrent service of the federal sentence at some time after its imposition.  This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition."  PS 5160.05 at p. 5.

Importantly, as the U.S. Court of Appeals for the Third Circuit acknowledged in Barden v. Keohane, 921 F.2d 476, 482-83 (3d Cir. 1990), the BOP has the authority to effectuate the service of concurrent federal and state sentences in circumstances when the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate.  See also PS 5160.05 at pp. 5-7.  For example, the BOP recognizes that the following might occur:  the state had primary custody over an inmate, his federal sentence is imposed first, the federal sentencing court does not order that the federal sentence be served concurrently with any state sentence, and then the state court subsequently imposes a state sentence.  Barden, 921 F.2d at 478-83; PS 5160.05 at pp. 5-7.  When this occurs, the inmate will have served his state sentence at a state institution and upon release is sent to federal custody for service of his federal sentence.  The inmate is permitted to request that the BOP retroactively designate the state institution as the detention facility where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), which in effect amounts to the imposition of a retroactive concurrent federal sentence.  Id. at 478-83; PS 5160.05 at pp. 5-7.

Although the BOP must consider the inmate's request for concurrent service of sentences, it is not obligated to grant the request.  Barden, 921 F.2d at 478 n.4; PS 5160.05 at p. 6.  In

making its determination, the BOP will review the federal sentencing court's Judgment and

Commitment Order, the state sentence data records, and any other pertinent information relating

to the federal and state sentences.  PS 5160.05 at pp. 5-7.  BOP policy further instructs:

> In determining whether a designation for concurrent service may be appropriate (*e.g.*, the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term), the [The Regional Inmate Systems Administrator ("RISA")] will send a letter to the sentencing court (either the Chambers of the Judge, U.S. Attorney's Office, and/or U.S. Probation Office, as appropriate) inquiring whether the court has any objections.  Regardless of where the original inquiry is directed, the U.S. Attorney's Office and U.S. Probation Office will receive a courtesy copy.
>
> If, after 60 days, a response is not received from the sentencing court, the RISA will address the issue with the Regional Counsel and a decision will be made regarding concurrency.

PS 5160.05 at p. 6.


### B.      Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences, and it provides:

> (a)  Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

A federal sentence cannot commence earlier than the date on which it was imposed.  PS 5880.28,

Chapt. I, at p. 13; United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998); Shelvy v.

Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983).

When an inmate is only facing service of a federal sentence, the application of 18 U.S.C.

§ 3585(a) is straightforward.  The BOP will designate the inmate to a federal detention facility

and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. I, at p. 12. Oftentimes, however (and as was the case here), an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. At common law, the "primary custody" doctrine (sometimes referred to as "primary jurisdiction" doctrine) developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. The doctrine was recognized by the U.S. Supreme Court in <u>Ponzi v. Fessenden</u>, 258 U.S. 254 (1922). <u>See</u>, <u>e.g.</u>, <u>Bowman v. Wilson</u>, 672 F.2d 1145, 1153-54 (3d Cir. 1982); <u>Peterson v. Marberry</u>, Docket No. 1:07-56, 2009 WL 55913 at *3-5 (W.D. Pa. Jan. 5, 2009).

In relevant part, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Bowman</u>, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." <u>Chambers v. Holland</u>, 920 F.Supp. 618, 622 (M.D. Pa. 1996) (citations omitted).

The BOP has incorporated the common law primary custody doctrine into its policies. Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, the federal government is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal

detention facility for service of the federal sentence and will calculate his federal sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence.  PS 5880.28, Chapt. I, at pp. 12-13.

If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is consecutive to any state sentence, the inmate will be returned to the state after federal sentencing.  The BOP will commence the inmate's federal sentence under 18 U.S.C. § 3585(a) when the state relinquishes its priority and releases him to federal custody.  PS 5880.28, Chapt. I, at pp. 12-13, 31-33; see also PS 5160.05 at pp. 2-12.  As set forth below, that is what occurred in Petitioner's case.

Finally, if the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence concurrently with any state sentence, the BOP will return custody of the inmate to the state, commence the federal sentence, and designate the state facility as the place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b).  PS 5880.28, Chapt. I, at pp. 13, 32A-33; PS 5160.05 at pp. 2-12.

### C.      Prior Custody Credit

Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides:

(b)      Credit for prior custody. – *A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –*

> (1)      as a result of the offense for which the sentence was imposed; or
>
> (2)      as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*That has not been credited against another sentence.*

(Emphasis added). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001); United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007).[4]

## II.     Relevant Facts and Procedural History

On September 18, 2003, Petitioner was arrested by Pittsburgh City Police and charged at Criminal Docket No. **CP-02-CR-0018350-2003** with the following state criminal offenses: (1) Possession With Intent to Deliver, (2) Possession of a Controlled Substance, and (3) Giving False Identification to Law Enforcement. He remained in state/local custody until March 12, 2004, when he posted bail. [ECF No. 13-2 at p. 7, Resp't Ex. 2, Kelly Decl. at ¶ 6; ECF No. 13-2 at pp. 21, Resp't Ex. 2a, Criminal Docket Sheet Case No. CP-02-CR-0018350-2003].

---

[4]     The BOP has created a limited exception to § 3585(b)'s rule against double credit in accordance with the decisions in Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993) and Willis v. United States, 438 F.2d 923 (5th Cir. 1971). Pursuant to Kayfez, the BOP will grant to a federal prisoner an amount of qualified double credit if the following conditions are present: (1) *the non-federal and federal sentences are concurrent*; (2) the raw effective full term ("EFT") date of the non-federal term is later than the raw EFT of the federal term; and (3) the non-federal raw EFT, after application of qualified non-federal presentence time, is reduced to a date that is earlier than the federal raw EFT date. See PS 5880.28, Chapt. I, at pp. 22B-24. Pursuant to Willis, the BOP will award an amount of non-federal presentence credit if the following conditions are present: (1) *the non-federal and the federal sentences are concurrent*; and (2) the non-federal raw EFT is either the same or earlier than the federal raw EFT. Id. Neither Kayfez nor Willis applies to this case because *Petitioner's federal sentence and state sentences are not concurrent.*

On June 26, 2004, Petitioner was arrested by Pittsburgh City Police based on the following state criminal charges filed in Criminal Docket No. **CR 0006570-2004**: (1) Simple Possession, (2) Possession with Intent to Deliver, (3) Carrying a Concealed Weapon on a Person Without a License, and (4) Former Felon Not to Own a Firearm.  [ECF No. 13-2 at p. 35, Resp't Ex. 2b, Criminal Docket Sheet, Case No. CR-0006570-2004].  The conduct underlying this state arrest resulted in the federal offense connected with the federal sentence Petitioner is currently serving.  [ECF No. 13-2 at p. 7, Resp't Ex. 2, Kelly Decl. at ¶ 6(b)].

On that same date (June 26, 2004), Petitioner was arraigned on the four state criminal charges at Criminal Docket No. **CR 0006570-2004** and also on an outstanding state criminal Aggravated Assault charge that was pending in Criminal Case No. **CP-02-CR-0012533-2004**. [ECF No. 13-2 at p. 7, Resp't Ex. 2, Kelly Decl. at ¶ 6(c); ECF No. 13-2 at p. 4, Resp't Ex. 2c, Criminal Docket Sheet, Case No. CP-02-CR-0012533-2004].  On June 27, 2004, Petitioner was booked by the Allegheny County Bureau of Corrections.  [ECF No. 13-2 at p. 7, Resp't Ex. 2, Kelly Decl. at ¶ 6(c)-(d)].

On November 19, 2004, the state charges at Criminal Case No. **CR-0006570-2004** (of Simple Possession, Possession with Intent to Deliver, Carrying a Concealed Weapon on a Person Without a License, and Former Felon Not to Own a Firearm) were dismissed.  However, after dismissal of those charges, Petitioner remained in the custody of the Allegheny County Bureau of Corrections pursuant to the Aggravated Assault charge pending at Criminal Case No. **CP-02-CR-0012533-2004**.  On January 18, 2005, that Aggravated Assault charge was Nolle Prossed/Withdrawn.  [ECF No. 13-2 at pp. 7-8, Resp't Ex. 2, Kelly Decl. at ¶ 6(e)-(f)].

On March 10, 2005, Petitioner was arrested by officers of the Homestead, Pennsylvania Police Department and charged at Criminal Case No. **CP-02-CR-0005130-2005** with the

following state crimes: (1) Burglary, (2) Possession With Intent to Deliver, (3) Possession of a Controlled Substance (second or subsequent offense), (4) Use/Possession of Drug Paraphernalia, (5) Terroristic Threats, (6) Simple Assault, and (7) Recklessly Endangering Another Person. Two days later, on March 13, 2005, he posted bond and he was released from the Allegheny County Bureau of Corrections. [ECF No. 13-2 at p. 8, Resp't Ex. 2, Kelly Decl. at ¶¶ 6(g)-(i); ECF No. 13-3 at pp.7-8, Resp't Ex. 2(e), Criminal Docket Sheet Case No. CP-02-CR-0005130-2005].

On April 26, 2005, a one count Indictment was filed in the U.S. District Court for the Western District of Pennsylvania at Criminal Docket **2:05-cr-00114** in connection with the events that had transpired on June 26, 2004. It charged Petitioner with Possession of a Firearm of a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). On that same date, an arrest warrant was issued. The Indictment and arrest warrant were sealed until further Order of Court to ensure that the arrest of Petitioner not be compromised and that the secrecy of the Grand Jury proceedings be maintained. (See ECF Nos. 1-4 in United States v. George, No. 2:05-cr-00114 (W.D. Pa.)).

On July 16, 2005, Petitioner was arrested by Pittsburgh Police Officers in Allegheny County, Pennsylvania. Petitioner contends that the officers that arrested him "specifically informed [him] that they were there to arrest him based on the federal indictment and arrest warrant that had issued." [ECF No. 5 at p. 2]. The record establishes, however, that he was arrested on that date by state/local authorities and not by federal authorities. [ECF No. 13-3 at p. 31, Resp't Ex. 2g, USM 129]. Specifically, during the Pittsburgh Police Officers' search of him, they found drugs. They arrested him on that date and he was charged at State Criminal Case No. **CP-02-CR-0011437-2005** with the state offenses of (1) Simple Possession, and

(2) Possession with Intent to Deliver.  [ECF No. 5 at pp. 13-15, Pet's Ex. A, Criminal Complaint; Pet's Ex. B, Probable Cause Affidavit; <u>see</u> <u>also</u> ECF No. 13-2 at p. 8, Resp't Ex. 2, Kelly Decl. at ¶ 6(j); ECF No. 13-3 at p. 22, Resp't Ex. 2f, Criminal Docket Sheet, Case No. CP-02-CR-0011437-2005].

On July 18, 2005, Petitioner was booked into the Allegheny County Bureau of Corrections and held at the Allegheny County Jail.  [ECF No. 13-2 at p. 8, Resp't Ex. 2, Kelly Decl. at ¶ 6(k)].  The U.S. Marshals Service filed a hold with the jail on that same date.  [ECF No. 5 at p. 18, Pet's Ex. D, Allegheny County Jail Inmate Lookup].

On August 1, 2005, a preliminary hearing was held in state court based on the charges stemming from his July 16, 2005 arrest.  Petitioner was granted an ROR bond on that case but he was not released for reasons that are not set forth in the record.  [ECF No. 5 at p. 4, Pet's Ex. F]. On August 17, 2005, the U.S. Marshals Service arrested Petitioner pursuant to the warrant issued by the U.S. District Court for the Western District of Pennsylvania at Criminal Docket 2:05-cr-00114, at the Allegheny County Jail.  [ECF No 13-3 at p. 31, Resp't Ex. 2g, USM 129].

On or around August 17, 2005, state/local authorities produced Petitioner for his August 19, 2005, arraignment in federal court, and his subsequent prosecution there, pursuant to a writ of habeas corpus *ad prosequendum*.  [ECF No. 13-2 at p. 8, Resp't Ex. 2, Kelly Decl. at ¶ 6(l); ECF No. 13-3 at p. 31, Resp't Ex. 2g, USM 129].  (<u>See</u> also ECF No. 5 in <u>United States v. George</u>, No. 2:05-cr-00114 (W.D. Pa.)).  A prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* is considered to remain in the custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person.  <u>See</u>, <u>e.g.</u>, <u>Ruggiano v. Reish</u>, 307 F.3d 121, 125 n.1 (3d Cir. 2002).  The receiving sovereign – in this case, the federal government

– is, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. Id.

On September 19, 2005, Petitioner appeared in the U.S. District Court for the Western District of Pennsylvania, and he pleaded guilty to Possession of a Firearm by a Convicted Felon, 18 U.S.C. § 922(g)(1). (ECF No. 19 in United States v. George, No. 2:05-cr-00114 (W.D. Pa.)). On February 15, 2006, the court sentenced him to a 71-month federal sentence with a three year term of supervised release to follow. The court was silent as to whether it intended the federal sentence to run consecutively or concurrently with any other sentence to which Petitioner was or would be subject. (ECF No. 36 in United States v. George, No. 2:05-cr-00114 (W.D. Pa.)).

Immediately after his federal sentence was issued on February 15, 2006, the U.S. Marshals Service returned Petitioner to state/local custody in satisfaction of the federal writ of habeas corpus *ad prosequendum*. The U.S. Marshals records shows that he was returned to the Allegheny County Jail with a detainer. [ECF No. 13-3 at p. 32, Resp't Ex. 2g, USM 129; ECF No. 13-2 at p. 9, Resp't Ex. 2, Kelly Decl. at ¶ 6(o)].

On November 21, 2006, Petitioner pleaded guilty in state court in three separate criminal cases. Specifically, he pleaded guilty: (1) in Criminal Case No. **CP-02-CR-0011437-2005** to Manufacture/Delivery/Possession With Intent to Manufacture or Deliver and Intent to Possess a Controlled Substance, and, (2) in Criminal Case No. **CP-02-CR-0018350-2003** to Manufacture/Delivery/Possession With Intent to Manufacture or Deliver, Intentional Possession of a Controlled Substance, and False Identification to Law Enforcement Officers. Upon acceptance of these guilty pleas, the Court of Common Pleas sentenced him to three to six years imprisonment to be served concurrently to each other and c*onsecutive to his federal sentence*.

(See Ex. A attached hereto).[5] He pleaded guilty in Criminal Case No. **CP-02-CR-0005130-2005** to Intent to Possess a Controlled Substance and Use/Possession of Drug Paraphernalia. The court did not impose a sentence of imprisonment for this case. [See ECF No. 13-2 at p. 9, Resp't Ex. 2, Kelly Decl. at ¶ 6(p)].

Upon imposition of the three to six year concurrent sentences in Case Nos. **CP-02-CR-0018350-2003** and **CP-02-CR-0011437-2005**, the state sentencing court set a non-monetary bond for both cases. However, Petitioner remained in state custody, and was transferred from the Allegheny County Bureau of Corrections to the Pennsylvania Department of Corrections on September 20, 2007. [See ECF No. 13-2 at p. 9, Resp't Ex. 2, Kelly Decl. at ¶ 6(q)]. Petitioner describes the events as follows:

> August 2007. While still incarcerated in the ACJ since July 16, 2005, the Allegheny County Sheriff's Department attempted to transport petitioner to a state facility to began [sic] service of the state sentence. After checking the ACJ computer, the Sheriff[ ] determined the petitioner was in federal custody, and because of that fact, could not transport petitioner to a state facility.
>
> September 2007. The Sherrif[] again attempted to transport petitioner to a state facility, and again, the Sherrif[] informed petitioner they could not transport petitioner because of the custody issue.
>
> September 20, 2007. The Sheriff[] transports petitioner to a state facility. The Sheriff[] stated they would leave it to someone else to work out the custody issue but, they were going to transport petitioner.

[ECF No. 5 at p. 4].

The Commonwealth of Pennsylvania applied credit against Petitioner's state sentences for time he served in official detention from August 18, 2003 through March 11, 2004 (207 days), from March 11, 2005, through March 13, 2005 (3 days), and from July 16, 2005 through

---

[5]     Attached at Exhibit A are the state court's sentencing orders. They are contained in Petitioner's publicly accessable criminal file and the Court shall take judicial notice of them.

November 21, 2006 (404 days), for a total of 704 days. [ECF No. 13-2 at p. 10, Resp't Ex. 2, Kelly Decl. at ¶ 6(r); ECF No. 13-3 at pp. 39-41, Resp't Ex. 2i, DOC Sentence Status Summary; ECF No. 13-4 at pp. 2-6, Resp't Ex. 2j, Independent Sentence Computation].

On April 30, 2008, Petitioner was paroled from his state sentences to the federal detainer. [ECF No. 13-2 at p. 9, Resp't Ex. 2, Kelly Decl. at ¶ 6(s)]. When Petitioner entered BOP custody, the BOP advised him that it calculated his federal sentence under 18 U.S.C. § 3585(a) as having commenced on April 30, 2008 (the date the Commonwealth released him to the federal detainer). It further advised him that, in accordance with § 3585(b)'s prohibition against double sentencing credit, he was not entitled to any prior custody credit for the time he served in official detention prior to April 30, 2008, which the Commonwealth had credited against his state sentence. [See 13-1 at p. 6, Resp't Ex. 1a, Inmate Data Sheet at p. 3].

Petitioner challenged the BOP's calculation by filing an administrative remedy request, which was denied at each level of review. [ECF No. 13-1 at pp. 7-14, Resp't Ex. 1b, Administrative Remedy Requests and Decisions]. The BOP also construed his administrative remedy request as a request that it retroactively designate the state institution where he served his state sentence as the detention facility where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b),[6] which, as set forth above, in effect would amount to the imposition of a retroactive (or *nunc pro tunc*) concurrent federal sentence. See Barden, 921 F.2d at 478-83.

In the course of evaluating Petitioner's request, the BOP sent a letter to the federal sentencing court in which it explained how it was computing his sentence. It also provided the

---

[6]      In Petitioner's circumstance, § 3621 required the BOP to consider the following factors:  (1) offense-specific information; (2) prisoner-specific information; and (3) statements of the sentencing court.  18 U.S.C. § 3621(b).  [See also ECF No. 13-4 at p. 13, Resp't Ex. 2m, Section 3621 Worksheet].

court with the opportunity to give its position on whether he should receive a retroactive concurrent designation. [ECF No. 13-4 at pp. 10-11, Resp't Ex. 2l, July 30, 2009, letter]. It is not clear from the evidence of record whether the federal sentencing court chose not to respond to the BOP's letter, or whether it advised the BOP that Petitioner's request should be denied. It either did one or the other. [Compare ECF No. 13-4 at p. 13, Resp't Ex. 2m, Section 3621 Worksheet and ECF No. 13-2 at p. 11, Resp't Ex. 2, Kelly Decl. at ¶ 6u "A review of [Petitioner's] J&C file indicates the Federal sentencing court did not respond to the July 30, 2009 letter" from the BOP, with ECF No. 13-1 at p. 14, Resp't Ex. 1b, ECF No. 13-1 at p. 14, Resp't Ex. 1b, National Inmate Appeals Response, where Petitioner was advised that the federal sentencing court "stated it would not be inclined to give credit for time spent in state custody."]. Either way, it is undisputed that the federal sentencing court *did not recommend* that Petitioner receive a retroactive designation.

In denying Petitioner's administrative appeal, Harrell Watts, Administrator National Appeals, informed him that the BOP had given his case thorough consideration with respect to the factors delineated in § 3621(b) and had concluded that it would not give him a retroactive concurrent designation. [ECF No. 13-1 at p. 14, Resp't Ex. 1b, National Inmate Appeals Response]. Thereafter, Petitioner filed the instant petition for writ of habeas corpus with this Court. [ECF Nos. 4-5]. Respondent has filed his reply and the case is now ripe for review. [ECF No. 13].

### III.    Discussion

#### A.    Subject Matter Jurisdiction

A challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255 and filed with the federal district court that convicted and sentenced the petitioner.  In cases such as this, where the petitioner is challenging the BOP's execution of his federal sentence, the habeas petition is properly brought in the district of confinement under 28 U.S.C. § 2241.  See, e.g., Barden, 921 F.2d at 478-79.

#### B.    Legal Analysis

This Court may only extend a writ of habeas corpus to Petitioner if he demonstrates that he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3).

##### 1.    The BOP did not violate § 3585(a) in commencing Petitioner's federal sentence on April 30, 2008

Petitioner contends that he was in the primary custody of the federal government when his sentence was imposed on February 16, 2005, and therefore the BOP should have commenced his federal sentence on that date pursuant to its above-cited policies.  The Court does not agree.

After Petitioner was sentenced by the state court in November of 2006, the state and the federal government determined that the state had primary custody over him.  That is why he remained in state custody and completed his term of imprisonment at a state correctional institution before he was transferred to federal authorities on April 30, 2008.  That also is the

reason why, if Petitioner's recitation of events is accurate, the BOP refused to take him into its custody when local authorities at the Allegheny County Jail attempted to transfer him to federal authorities after the Common Pleas Court sentenced him in November of 2006. Petitioner had no standing at that time to challenge the federal and state authorities' determination as to which sovereign had primary custody over him, and there is no basis now for this Court to disturb their determination. Bowman, 672 F.2d at 1153-54, quoting Derengowski v. United States Marshal, 377 F.2d 223, 224 (8th Cir. 1967) for the proposition that: "'[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.' He has no standing to raise the issue."). See also Rashid v. Quintana, No. 1:08-cv-107, 2009 WL 3271214 at *1 n.3 (W.D. Pa. Oct. 9, 2009), aff'd 372 F.App'x 260 (3d Cir. 2010).

Even if Petitioner could challenge the BOP's primary custody determination, his challenge would be rejected because it is not supported by the record. He contends that he was arrested on authority of the federal government on July 16, 2005, and that it maintained primary custody over him from that date forward. The record shows, however, that Petitioner was arrested by the U.S. Marshals Service on *August 17, 2005, at the Allegheny County Jail*. [ECF No 13-3 at p. 31, Resp't Ex. 2g, USM 129]. By that date, he had already been arrested by the state/local authorities in connection with state Criminal Case No. **CP-02-CR-001147-2005**, which had charged him with drug related crimes for the drugs the officers had found on him during the July 16, 2005, search. [ECF No. 5 at pp. 13-15, Pet's Ex. A, Criminal Complaint; Pet's Ex. B, Probable Cause Affidavit; see also ECF No. 13-2 at p. 8, Resp't Ex. 2, Kelly Decl. at ¶ 6(j); ECF No. 13-3 at p. 22, Resp't Ex. 2f, Criminal Docket Sheet, Case No. CP-02-CR-

0011437-2005].  Therefore, the state/local authorities had primary custody over him by virtue of that arrest.

Petitioner's contention that he was in the primary custody of the federal government also is belied by the fact that state/local authorities produced him for his August 19, 2005, arraignment in the federal district court, and his subsequent prosecution there, pursuant to a writ of habeas corpus *ad prosequendum*.  [ECF No. 13-2 at p. 8, Resp't Ex. 2, Kelly Decl. at ¶ 6(l)]; (See also ECF No. 5 in United States v. George, No. 2:05-cr-00114 (W.D. Pa.)).  Then, immediately after his federal sentence was imposed on February 15, 2006, the U.S. Marshals Service returned him to the Allegheny County Jail in satisfaction of the writ and filed a detainer with the jail.  [ECF No. 13-3 at p. 32, Resp't Ex. 2g, USM 129; ECF No. 13-2 at p. 9, Resp't Ex. 2, Kelly Decl. at ¶ 6(o)].  This indicates that the federal authorities consistently acted in accordance with its understanding that the state had primary custody of Petitioner.  And although there may have been some initial confusion on the part of state/local authorities as to whether the state had primary custody over him, the matter was resolved and the state maintained primary custody over him until April 30, 2008, when was "received in custody awaiting transportation to" a federal facility to serve his federal sentence.  Accordingly, the BOP properly commenced his federal sentence on that date pursuant to § 3585(a) and applicable policy.  See PS 5880.28, Chapt. I, at pp. 12-13, 31-33 and PS 5160.05 at pp. 2-12 (If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing.  The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody).

### 2. The BOP did not abuse its discretion in denying Petitioner's request for a retroactive concurrent designation under § 3621(b)

Next, the Court must consider whether the BOP abused its discretion in declining to grant Petitioner a retroactive, or *nunc pro tunc*, concurrent designation pursuant to 18 U.S.C. § 3621(b). Barden, supra; PS 5160.05 at pp. 5-7. It did not. It followed the procedures set forth in PS 5160.05 in considering Petitioner's request for retroactive concurrent designation and determined that such a designation was not warranted in this case.

There is no basis for this Court to disturb the BOP's decision. The federal sentencing court did not order that Petitioner serve his federal sentence concurrently with his state sentences. Thus, the BOP is not obligated to calculate Petitioner's federal sentence as if he has been serving it concurrently with his state sentences. And because neither the federal court nor the state court ordered that Petitioner serve his state and federal sentences concurrently, there can be no disputing that he is serving them in the manner he should be – consecutively.

### 3. Calculation of prior custody credit under § 3585(b)

Finally, this Court must evaluate whether the BOP properly calculated the amount of prior custody credit under 18 U.S.C. § 3585(b). As set forth above, it determined that Petitioner is entitled to 209 days federal prior custody credit. It reached that determination by considering all of the time that he served in official detention through April 29, 2008 (the day before his federal sentence commenced) *that was not credited against his state sentences.* As Respondent explains, between June 26, 2004, up to and including April 29, 2008, he was held in detention

during the following time spans: (1) from June 26, 2004, and January 19, 2005; (2) from March 10, 2005, and March 13, 2005; and (3) from July 16, 2005, through April 29, 2008. Records from the state of Pennsylvania reflect that all time served from March 11, 2005, through March 13, 2005, and from July 16, 2005, through April 30, 2008, was credited against his state sentence. [ECF No. 13-2 at pp. 17-18, Resp't Ex. 2, Kelly Decl. at ¶ 15; see also ECF No. 13-4 at p. 16, Resp't Ex. 2n, Federal Sentence Computation]. Therefore, the BOP is statutorily precluded from granting Petitioner any prior custody credit under § 3585(b) for the time he spent in official detention on those days. Rios, 201 F.3d at 271-76; Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) for because the time at issue had been credited against the petitioner's state sentence). It properly gave him a total of 209 days prior custody credit for time served in official detention from June 26, 2004, through January 19, 2005 (208 days), and on March 10, 2005 (one day).

### C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## IV.    CONCLUSION

For the foregoing reasons, the Court denies the Petition for Writ of Habeas Corpus.  An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN GEORGE, JR.** | ) | |
| **Petitioner,** | ) | **Civil Action No. 10-65 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **ARCHIE LONGLEY,** | ) | |
| **Respondent.** | ) | |

## ORDER

AND NOW, this 6th day of April, 2011;

IT IS HEREBY ORDERED that the petition for writ of habeas corpus is DENIED and

the Clerk of Courts is hereby directed to close this case.  IT IS FURTHER ORDERED that

Petitioner's motion for expedited ruling [ECF No. 14] is dismissed as moot.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge